**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0516n.06
Filed: August 21, 2008

No. 06-2344

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| M & C CORP., | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ERWIN BEHR GMBH & CO., KG, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

**Before:  GUY, MOORE, and GILMAN, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellant Erwin Behr GmbH & Co., KG ("Behr") appeals three post-judgment orders in an arbitration case that has spanned sixteen years and involved four prior appearances before this court.  Behr appeals an order awarding litigation expenses and statutory penalties under Michigan law to Plaintiff-Appellee M & C Corporation ("M&C"), an order finding Behr in contempt of court, and a discovery order.  M&C has filed a motion to dismiss Behr's appeal, arguing that none of the orders challenged are appealable final orders.  For the reasons discussed below, we **DENY** M&C's motion to dismiss the appeal, we **AFFIRM** the contempt and discovery orders, but we **AFFIRM** in part and **REVERSE** in part the order regarding litigation expenses and statutory penalties.

## I. BACKGROUND

Although the procedural history of this case is lengthy and complex, the facts relevant to this appeal can be summarized fairly briefly.[1]  In 1985, M&C entered a contract with Behr to act as the exclusive sales agent for Behr in the United States and Canada for at least five years for the sale of wood interior panels for General Motors' luxury automobiles.  The contract specified that Michigan law governed the parties' agreement and that any disputes arising in connection to the contract be arbitrated under the Rules of the Court of Arbitration of the International Chamber of Commerce.  Behr terminated the agreement in 1991 but failed to pay M&C commissions it had earned for some sales and client development work.  The parties' dispute eventually came before an arbitrator in London, England, and on March 1, 1994, the arbitrator issued eleven awards,[2] which the district court confirmed, and this court affirmed.  *M &C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844 (6th Cir. 1996) (*Behr I*).

One of the awards, Award Eight, concerned payment of future commissions on the sales of certain orders, and the parties disputed which orders were included within the scope of that award. The district court agreed with Behr that the award was ambiguous regarding on which "orders" M&C deserved commissions, and the district court remanded the case to the arbitrator for clarification.

---

[1]The last time this case appeared in our court, we summarized the relevant facts in somewhat greater detail.  *See M & C Corp. v. Erwin Behr GmbH & Co., KG*, 411 F.3d 749, 751-56 (6th Cir. 2005) (*Behr IV*) (withdrawn); 2005 WL 1413132.  The facts summarized above come from our opinion in *Behr IV*.

[2]Several of the awards compelled Behr to pay M&C money.  "The total amount of principal payments required under these awards is $1,976,292.47, which was to be paid in full, irrespective of any other judicial proceeding, by March 31, 1994 . . . . Behr did not make any payment on the principal amount of any of these awards," and, as the district court noted in February 1996, "[t]o date, Erwin Behr has not complied with any of the awards."  *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 165 F.R.D. 65, 66 (E.D. Mich 1996).

We reversed that decision in *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 143 F.3d 1033 (6th Cir. 1998) (*Behr II*). The parties continued to dispute the amount owed under the Eighth Award, and the district court again remanded the case to the arbitrator for clarification. We reversed and remanded again, requesting that the district court clarify the precise reason for its remand to the arbitrator. *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 326 F.3d 772 (6th Cir. 2003) (*Behr III*).

In March 2004, the district court specified that "'[t]he award is unclear insofar as the Court cannot determine whether or not [a list appearing in the award] is the exclusive list of the products on which commissions are due . . . [and] there is a continuing controversy over how long particular parts are commissionable.'" *Behr IV*, 411 F.3d at 756 (quoting district court's remand order). The district court remanded the case to the original arbitrator "(1) to state the exact scope of the products commissionable under the Eighth Award and (2) to state what payments, if any, are due to each party from the other under the Eighth Award." *Id.*

Behr appealed the district court's March 2004 remand order, and, while that appeal was pending in our court, the arbitrator held the hearing that the district court had ordered on April 11-13, 2005, in London. On April 28, 2005, we heard oral argument in *Behr IV* and filed our decision on June 17, 2005. In *Behr IV*, we concluded that the Eighth Award was not ambiguous and, retaining jurisdiction in the case, we solicited further filings regarding the amounts owed under the reading of the award and contract adopted in our opinion.

The day after *Behr IV*, the arbitrator issued a letter clarifying the award, *see* Joint Appendix ("J.A.") at 286-91 (Arbitrator's 2005 Letter), and on July 27, 2005, we withdrew and vacated our opinion, J.A. at 393 (Sixth Circuit Order). We stated that "in view of the arbitrator's clarification"

3

we granted the petition for rehearing, vacated our opinion, and remanded the case "to the district court for enforcement proceedings in accordance with the arbitration award." *Id.*

M&C filed a number of motions attempting to enforce the clarified award, and those motions gave rise to the Orders at issue in this appeal. In particular, on September 14, 2006, the district court issued an order granting M&C's motion for assessment of litigation expenses and statutory penalties under the Michigan Sales Representatives Commission Act ("MSRCA"), accepting the magistrate judge's report and recommendation ("R&R"). J.A. at 65-73 (Statutory Damages & Litigation Fees Order). As noted in the magistrate judge's R&R, as to statutory damages, the MSRCA provides that a principal who "intentionally" fails to pay commissions when they are due must pay "an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less." MICH. COMP. LAWS § 600.2961(5)(b); J.A. at 305 (Statutory Damages & Litigation Expenses R&R). The MSRCA also provides that "the court shall award to the prevailing party reasonable attorney fees and court costs" and defines "prevailing party" as "a party who wins on all the allegations of the complaint or on all of the responses to the complaint." MICH. COMP. LAWS §§ 600.2961(6), 600.2961(1)(c).

The district court also issued an order on September 14, 2006, granting M&C's motion for contempt, again accepting the magistrate judge's R&R. J.A. at 74-83 (Contempt Order). The contempt order was based on Behr's violation of an earlier January 1996 order that placed Behr in receivership in response to Behr's efforts to obstruct and delay M&C from collecting the payments that the arbitrator had awarded M&C in 1994.

On January 31, 1996, the district court stated that it would "impose a limited receivership over any direct or indirect property interest held by Erwin Behr in Behr Industries ["BIC"] of Grand

4

Rapids, Michigan." J.A. at 115 (Receivership Order at 18). On March 29, 1996, the district court issued an Addendum to the Receivership Order, which contained the following language: "IT IS FURTHER ORDERED that the defendant, Erwin Behr GmbH & Company, KG, its officers, agents, servants, employees, attorneys . . . are enjoined from directly or indirectly transferring, receiving, changing, encumbering, selling, removing, assigning or otherwise disposing of any assets and property owned, controlled, or in possession of the defendant." J.A. at 123. (Addendum to Receivership Order). In 1996, Behr owned Erwin Behr Beteiligungs-GmbH ("Behr Beteiligungs"), which owned Erwin Behr Automotive GmbH ("Behr Automotive"), which owned BIC. J.A. at 315 (Contempt R&R at 3); J.A. at 302 (Villwock Decl.).

In May 2005, while the case was pending in our court, Behr Beteiligungs sold its subsidiary Behr Automotive, and its subsidiary BIC, to a German private equity firm; this transaction occurred without any notice to M&C, the district court, our court, the arbitrator, or the court-appointed receiver. J.A. at 315 (Contempt R&R at 3). Behr has not disclosed any of the terms or conditions of the sale. *Id.* The magistrate judge found that "Defendants are in unequivocal contempt of this Court's order," J.A. at 317 (Contempt R&R at 5), and the district court agreed, noting that "[s]ince the confirmation of the arbitration award, M&C has had extreme difficulty in collecting the amount due," J.A. at 75 (Contempt Order at 2).

Finally, on September 14, 2006, the district court issued an order overruling Behr's objections to the magistrate judge's order requiring Behr to produce a witness for deposition in Detroit, Michigan. J.A. at 84-85 (Discovery Order). The magistrate judge's amended discovery order noted that "Plaintiff [M&C] obtained a money judgment against [Behr, and Behr] has since frustrated the attempts of [M&C] and this Court to ascertain the nature and location of [Behr's]

5

assets." J.A. at 485-86 (Amended Discovery Order at 2-3). Although Behr's counsel had claimed that Behr was insolvent under German law and was under the control of an estate administrator who lacked relevant personal knowledge and funds to travel to the United States, J.A. at 459-60 (Discovery Order at 1-2), the U.S. Bankruptcy Court for the Eastern District of Michigan denied Behr's application for recognition of a foreign bankruptcy proceeding. J.A. at 485 (Amended Discovery Order at 2). Behr identified a representative willing to testify by phone from Germany, but this individual was affiliated with Behr Automotive, not Behr. Appellant Br. at 52-53. The magistrate judge found that this proposal did not comply with the discovery order, and the magistrate judge amended the discovery order, requiring Behr to make a number of disclosures and to designate and make available a witness for a deposition in Detroit. J.A. at 486 (Amended Discovery Order).

Behr timely appealed all three orders of the district court. In March 2007, M&C filed a motion to dismiss Behr's appeals for lack of jurisdiction, contending that none of the orders were final, appealable orders. In April 2007, Behr filed a response, and M&C then filed a reply.

## II. ANALYSIS

### A. Statutory Damages and Litigation Expenses Order

M&C argues that we lack jurisdiction to review the district court's order awarding M&C statutory damages and litigation expenses because the order was not a final judgment, as it left undetermined the amount that M&C was entitled to receive. Behr argues that the Arbitrator's 2005 letter was a "new award" requiring confirmation before any enforcement proceeding. Neither argument is convincing, and we address each in turn. Finally, Behr argues that the district court improperly granted M&C's motion for damages and expenses when no arbitrator had considered or ruled on these claims, and we agree.

6

**1. Jurisdiction**

M&C contends that the district court's Statutory Damages and Litigation Fees Order is not an appealable final judgment because the district court did not award a precise amount of litigation expenses, but remanded the issue to the magistrate judge for consideration after M&C produces evidence of its expenses. *See* Appellee Br. at 29; *see also* Appellee's Motion to Dismiss.[3] As Behr notes, however, the portion of the order awarding M&C statutory penalties *is* complete and final. We have noted that "[a]s a practical matter, most post-judgment orders should be deemed final because 'there is often little prospect that further proceedings will occur to make them final.'" *United States v. One 1985 Chevrolet Corvette*, 914 F.2d 804, 807 (6th Cir. 1990) (quoting *United States v. Washington*, 761 F.2d 1404, 1406 (9th Cir. 1985)). In its order regarding statutory penalties under the MSRCA, the district court fixed a specific amount, and only M&C's collection of that amount remains. We have held that "[u]nder the doctrine of pendent appellate jurisdiction . . . a court of appeals may, in its discretion, 'exercise jurisdiction over issues that are not independently appealable when those issues are "inextricably intertwined" with matters over which the appellate court properly and independently has jurisdiction.'" *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 549 (6th Cir. 2002) (quoting *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998)).

[3]The parties vigorously dispute whether an order finding liability for, but not determining the amount of, attorney fees is final and appealable. M&C's position appears correct: such an order may *not* be appealable. *See Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th Cir. 1988) (noting prior holding "that while a judgment on the merits was a final judgment and could be appealed when the amount of attorneys' fees was undecided, such reasoning did not apply to a splitting of the elements of attorneys' fees") (internal citation omitted). As explained in text above, however, resolving this issue does not settle the matter because the district court's award of statutory damages under the MSRCA *is* a final order.

7

The district court's Statutory Damages and Litigation Fees Order deals with two claims under the MSRCA, and the order completely disposes of the statutory penalties claim. M&C concedes that the statutory penalty aspect of the order is final and appealable but argues that we should not consider the appeal essentially because of Behr's history of delay and obstruction. Appellee's Motion to Dismiss at 18-19. Although we recognize that this litigation has a protracted history, we nonetheless exercise our discretion to consider the issue of litigation expenses along with the intertwined issue of the propriety of damages under the MSRCA.

## 2. The Need to Confirm the Arbitrator's 2005 Clarification Letter

Behr argues that the Arbitrator's 2005 Clarification Letter is a new award requiring judicial confirmation under the FAA prior to enforcement. Appellant Br. at 31-36. Behr describes the letter as a new award because the arbitrator held a hearing, considered new evidence, and determined a specific amount of damages owed to M&C. We have previously held, however, that "the arbitrator has the power . . . to go back and 'clarify' an ambiguous or incomplete portion of an award," and that is precisely what the arbitrator did in this case. *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546, 555 (6th Cir. 2004). The parties have disputed the scope of the arbitrator's original Eighth Award, which was a forward-looking order of specific performance that commanded Behr to pay M&C commissions on the future sales of a class of products. The parties' dispute as to which products the arbitrator intended to include in this order has exceeded a decade, and all the possible parts on which M&C might conceivably deserve a commission were sold long ago. After the matter was finally remanded in 2005 to the original arbitrator, he held a hearing and issued a letter clarifying the exact products he had meant to include in the original award. Once the arbitrator identified those products using Behr's own sales records,

8

as kept by the court-appointed receiver, J.A. at 290 (Arbitrator's 2005 Clarification Letter at 5), the matter of calculating the commissions owed to produce an award total was a simple, ministerial task.

Even the case law that Behr cites supports viewing the arbitrator's letter as a clarification and not a new award requiring confirmation. As the Seventh Circuit has explained, when determining whether an arbitrator's action is an award, courts should "go beyond a document's heading and delve into its substance and impact." *Publicis Commc'n v. True North Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000); *see also* Appellant Br. at 32-36 (citing *Publicis*). The substance and impact of the arbitrator's 2005 letter, issued after a remand ordered by the district court, was merely to clarify the scope of the original award, not to issue any new award to M&C. The original Eighth Award was one of specific performance, and although the arbitrator held a hearing and heard new evidence, the effect of the letter was merely to clarify and determine precisely what Behr should have paid M&C under the original award.

We conclude that the arbitrator's 2005 letter was merely a clarification of the original award that did not require confirmation.

### 3. The Award of Damages and Litigation Expenses under the MSRCA

Behr contends that the district court lacked the authority and jurisdiction to grant M&C's motion for damages and litigation expenses under the MSRCA. We agree.

As we noted in *Behr I*, the parties' contract required them to submit disputes to arbitration. *Behr I*, 87 F.3d at 846 (noting that the district court stayed proceedings on Behr's breach of contract suit and "ordered the parties to submit the dispute to arbitration as required by the contract"). To receive damages, the MSRCA requires a showing that a defendant "intentionally failed to pay the commission when due," and the MSRCA provides litigation expenses only to a "prevailing party,"

9

which it defines as "a party who wins on all the allegations of the complaint or on all of the responses to the complaint." MICH. COMP. LAWS § 600.2961. In his 2005 letter, the arbitrator specifically declined to consider the issues of damages and expenses, noting that although "M&C also claim[s] attorney's fees and costs[, t]hose are not a matter for me but for the US Courts in which proceedings for enforcement have been brought." J.A. at 288 (Arbitrator's 2005 Letter at 3). Nonetheless, we believe that the issues of whether Behr "intentionally failed to pay" commissions to M&C and whether M&C qualifies as a "prevailing party" are questions that an arbitrator, not the district court or magistrate judge, must answer given the parties' contract requiring arbitration of their disputes.

Behr made this argument to the district court, but the court summarily rejected it. The district court stated Behr's position as, "[i]n short, if the arbitrator did not make a ruling on statutory penalties, Behr argues, this Court is unable to make a ruling." J.A. at 69 (Statutory Damages and Litigation Fees Order at 5). The district court labeled that objection "meritless," explaining that "the arbitrator did make a ruling on [M&C's] entitlement to these additional expenses in his original March 1, 1994 arbitration award," in which "the arbitrator found that M&C was entitled to statutory penalties." *Id.* But, as Behr points out, the original arbitration award found that Behr "intentionally failed" to pay commissions on sales that occurred between 1991, when Behr terminated the agreement with M&C, and 1994, when the arbitration occurred. Appellant Br. at 21-26. In 2005, M&C was seeking damages for Behr's failure to pay commissions on sales that occurred *after* the 1994 arbitration and award. The arbitrator's finding in 1994 regarding Behr's conduct between 1991 and 1994 could not possibly be relevant to whether Behr "intentionally failed" to pay these later

10

commissions. Whether Behr intentionally failed to pay these later commissions is a new question that an arbitrator, not the district court, should address in this first instance.[4]

The issue of M&C's entitlement to litigation expenses was similarly improper for the district court to decide. The arbitrator's original 1994 award found that M&C was entitled to litigation expenses as a prevailing party under the MSRCA, J.A. at 388-89 (Arbitration Award at 42-43) (awarding M&C $335,793.47 in legal expenses because it "succeeded" on the vast majority of its claims), but the arbitrator's June 2005 letter expressly declined to consider whether M&C was entitled to litigation expenses from litigating the scope of the Eighth Award. J.A. at 288 (Arbitrator's 2005 Clarification Letter at 3). While the arbitrator's 2005 letter did adopt a view of the Eighth Award in line with M&C's view of the award, the question of whether M&C is a prevailing party—which determines any entitlement to litigation expenses—is a matter that an arbitrator, not the district court, should determine.[5]

In sum, we **AFFIRM** the district court's Statutory Damages and Litigation Fees Order insofar as it determined that the arbitrator's 2005 letter was merely a clarification of the original award that did not require confirmation, but we **REVERSE** the remainder of the order because the court

---

[4]Furthermore, given that the parties vigorously debated the scope of the Eighth Award for years, with the district court and our court reaching varying interpretations of its meaning, we note that Behr would seem to have a strong good-faith defense for its failure to pay M&C the commissions. Indeed, in *Behr IV*, we initially agreed with Behr's interpretation of the Eighth Award and sought further submissions from the parties to determine whether Behr had already satisfied the award or, in fact, *overpaid* M&C under Award Eight. *Behr IV*, 411 F.3d at 758, 761-62 (stating that "[w]e agree with Behr" and noting expert's calculation that Behr overpaid M&C).

[5]Because we conclude that M&C may not receive litigation expenses prior to an arbitrator's finding that M&C is entitled to them, we do not address the parties' dispute regarding whether the cost of the court-appointed receiver may be recovered as a "court cost" under MICH. COMP. LAWS § 600.2961(6).

11

improperly usurped the role of the arbitrator in determining whether M&C was entitled to damages and litigation expenses under the MSRCA.

## B. Contempt Order

### 1. Standard of Review

"This Court reviews a district court's finding of contempt for an abuse of discretion." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006). "An abuse of discretion exists where the district court relied upon clearly erroneous findings of fact or applied an incorrect legal standard [and t]his Court will reverse only if it is left with a firm and definite conviction that a mistake has been made." *Id.* (internal citation omitted).

"The movant in a civil contempt proceeding bears the burden of proving by clear and convincing evidence that the respondent 'violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Id.* (quoting *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991)). "This Court requires that the prior order be 'clear and unambiguous' to support a finding of contempt." *Id.* at 550-51 (quoting *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996)). We must resolve ambiguities "in favor of the party charged with contempt." *Id.* at 551.

### 2. Jurisdiction

M&C argues that we lack jurisdiction to hear an appeal of a contempt order, citing *Joy & Middlebelt Sunoco, Inc. v. Fusion Oil, Inc.*, 179 F. App'x 301, 303 (6th Cir. 2006), for the proposition that "a civil contempt order . . . is not considered a final order in this Circuit." In *Fusion Oil*, however, we next immediately quoted *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 500 (6th Cir. 2000), in which we stated that "a 'judgment of civil contempt is not [itself] a final

decree,' and therefore is not appealable *in the absence of a final judgment*." *McAlpin*, 229 F.3d at 500 (alteration in original, emphasis added) (quoting *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976)); *see also United States v. Conces*, 507 F.3d 1028, 1037 n.7 (6th Cir. 2007) (citing *McAlpin* and stating that "the post-judgment contempt order entered by the district court in this case is considered final and reviewable"). This appeal involves a final judgment, and, as we noted in *McAlpin*, the policy of preventing piecemeal litigation is served when a final judgment exists because the concern that the appeal of the contempt order represents an interlocutory order is not present. *Id.*

M&C misreads *Fusion Oil* and *McAlpin*, and both cases demonstrate that we have jurisdiction in this case to hear Behr's appeal of the district court's order finding it in contempt.

**3. Analysis**

Behr challenges the contempt order on the ground that the wording in the original orders was ambiguous and did not cover the transaction in question. We disagree, and accordingly we **AFFIRM** the contempt order.

As stated above, on January 31, 1996, the district court stated that it would "impose a limited receivership over any direct or indirect property interest held by Erwin Behr in Behr Industries [BIC] of Grand Rapids, Michigan." J.A. at 115 (Receivership Order at 18). On March 29, 1996, the district court issued an Addendum to the Receivership Order, which contained the following language: "IT IS FURTHER ORDERED that the defendant, Erwin Behr GmbH & Company, KG, its officers, agents, servants, employees, attorneys . . . are enjoined from directly or indirectly transferring, receiving, changing, encumbering, selling, removing, assigning or otherwise disposing

of any assets and property owned, controlled, or in possession of the defendant." J.A. at 123. (Addendum to Receivership Order).

Behr's challenge to the contempt order hinges on arguing that because the words "directly or indirectly" modify the list of verbs beginning with "transferring," and do *not* modify the phrase "any assets and property owned, controlled, or in possession of the defendant," the Addendum to the Receivership Order did not clearly reach Behr's "indirect" property interest in BIC, a subsidiary corporation several levels below Behr. Even resolving any possible ambiguities in favor of the party charged with contempt, this argument lacks any merit. As the district court noted in its contempt order, the "January 31, 1996 receivership order . . . noted that Behr may be holding and concealing assets through a chain of affiliates, including BIC." J.A. at 78 (Contempt Order at 5). Further, although Behr expends much effort arguing that, under doctrines of corporate law, a parent company does not "own" legally distinct subsidiary corporations, Behr ignores that the Addendum *also* prohibited Behr from transferring or disposing of "any assets and property . . . *controlled*" by it. J.A. at 123 (Addendum to Receivership Order) (emphasis added). A corporation that owns 100% of the shares of another corporation, or chain of corporations, "controls" those corporations in any meaningful sense of the word. Most importantly, the Receivership Order made *specific reference* to BIC. J.A. at 115 (Receivership Order at 18).

Given that the Order's operative language included the word "controlled" and that the Order specifically referred to BIC, we hold that the district court did not abuse its discretion in finding Behr in contempt.

14

## C. Discovery Order

### 1. Standard of Review

"[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).

### 2. Jurisdiction

M&C argues that we lack jurisdiction over Behr's appeal of the district court's discovery order because "post-judgment orders granting discovery, such as those relating to judgment debtors 'are not considered final judgments and may be appealed only after the issuance of a contempt order for failure to comply.'" *Piratello v. Philips Elecs. N. Am. Corp.*, 360 F.3d 506, 509 (5th Cir. 2004) (quoting *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991)); *see also* Appellee Br. at 31-32 (citing *Piratello* and *Richmark* along with cases from the Seventh and Eleventh Circuits). M&C also notes that the Seventh Circuit has observed that when a "judge orders discovery, the person ordered to produce, if desperate for an immediate appeal, can disobey the order and appeal the resulting judgment for criminal contempt." *Cent. States, Se. & Sw. Areas Pension Fund v. Express Freight Lines, Inc.*, 971 F.2d 5, 6 (7th Cir. 1992).

Behr counters with two arguments: that a contempt order *is* present in this case, and that M&C misreads Judge Posner's opinion in *Express Freight Lines*. *See* Appellant Resp. to Mot. to Dismiss at 9-11. We agree with Behr's second argument that M&C misreads Judge Posner's opinion in *Express Freight Lines* and that his reasoning would support holding that jurisdiction exists over Behr's appeal in this case. Appellant Resp. to Mot. to Dismiss at 10.

Behr highlights the following language from *Express Freight Lines*:

A contested collection proceeding will end in a judgment or a series of judgments granting supplementary relief to the plaintiff. The judgment that concludes the collection proceeding is the judgment from which the defendant can appeal. In doing so he can of course bring before the appellate court any interlocutory orders of which he complains that have not become moot, including an order granting his adversary postjudgment discovery. But that order is not appealable until then.

*Express Freight Lines*, 971 F.2d at 6 (internal citations omitted); *see also* Appellant Reply Br. at 5-6; Appellant Resp. to Mot. to Dismiss at 10. We have previously cited *Express Freight Lines* regarding a related point. *United States v. Worthy*, No. 97-4459, 1998 WL 898840, at *1 (6th Cir. Dec. 17, 1998) (per curiam order) (stating that "the district court's order denying Worthy's discovery motion was a final judgment" and citing *Express Freight Lines*).

We therefore hold that a party may appeal a post-judgment order granting discovery when the party is also appealing the collection judgment itself, as is the case here given that Behr is appealing the district court's final order regarding the assessment of statutory damages and litigation expenses under the MSRCA. We proceed to discuss whether the district court abused its discretion in granting M&C's motion for discovery.

### 3. Analysis

In light of the history of this case, in which Behr has received numerous sanctions for its tactics of delay and obstruction,[6] and given what the magistrate judge termed Behr's "unequivocal"

---

[6]*See M & C Corp. v. Erwin Behr GmbH & Co., KG*, 34 F. Supp. 2d 543, 548, 545 (E.D. Mich. 1999) ("not[ing] that the conduct of Erwin Behr throughout the pendency of these collection proceedings has been deplorable" and that "[m]any of [M&C's] valid discovery techniques have been resisted by Erwin Behr, particularly the depositions of the [BIC] and Erwin Behr representatives[,] . . . [which] is consistent with its prior attempts . . . to frustrate the development of this case and delay the ultimate payment of its obligation"); *see also M & C Corp. v. Erwin Behr GmbH & Co., KG*, 165 F.R.D. 65, 67 (E.D. Mich. 1996) (describing Behr's attitude as "disgraceful," its "calculated strategy to delay payment of this judgment," and its "blatant lack of respect for the authority of this nation's judicial process").

violation of the district court's Receivership and Addendum orders, the district court did not abuse its discretion in entering the discovery order in this case. In its 1996 Receivership Order, the district court presciently observed that because "Behr has already demonstrated that its disclosures have not been consistently accurate . . . there is a very real concern in this case that assets of a foreign corporation, which might otherwise be used to satisfy this judgment, may be removed from the jurisdiction of this court." J.A. at 115 (Receivership Order at 18). For that reason, the district court "impose[d] a limited receivership over any direct or indirect property interest held by Erwin Behr in [BIC] of Grand Rapids, Michigan." *Id.* In May 2005, while this case was pending before this court, one of Behr's subsidiaries, over which it had total control, sold off a subsidiary that owned BIC in blatant violation of the district court's order.

After M&C learned that Behr had sold BIC, M&C sought to depose a representative of Behr regarding this transaction, and Behr has refused to designate any witness, claiming it has entered bankruptcy in Germany. But as M&C notes, Behr has twice had its petitions for recognition of a foreign bankruptcy proceeding dismissed. Appellee Br. at 60-61 (citing dismissals). Further, M&C notes that although Behr contends that its German bankruptcy proceeding was filed in August 2005 and power over the company was vested in a person beyond its control, Appellant Br. at 50-51, Behr was nonetheless able on October 13, 2005, to secure a sworn declaration from Klaus Villwock, who stated that he was the former manager of Behr who could testify about various matters relating to Behr for the purpose of challenging the contempt order. J.A. at 302-03 (Villwock Aff.); Appellee Br. at 61-62.

In light of these facts, the district court's statement that "[t]he Magistrate Judge did not err in believing that there must be at least one person who can speak on behalf of Behr" was not an

abuse of discretion. J.A. at 84 (Order Overruling Behr's Objections to Magistrate Judge's Discovery Order); *see also* J.A. at 459-61 (Magistrate Judge's Order Granting M&C's Motion to Compel Discovery).

In sum, we hold that we have jurisdiction to consider Behr's appeal of the discovery order alongside Behr's appeal of the statutory damages and litigation expenses order and the contempt order. We also hold that the district court did not abuse its discretion in ordering that Behr designate an official for a deposition in the United States.

## III. CONCLUSION

For the reasons discussed above, we **DENY** M&C's motion to dismiss the appeal, we **AFFIRM** the district court's contempt and discovery orders, but we **AFFIRM** in part and **REVERSE** in part the order regarding litigation expenses and statutory penalties.